245 So.2d 595 (1971)
Glen A. STINSON, Defendant/Appellant,
v.
Butler C. BARKSDALE, Complainant/Appellee.
No. 46019.
Supreme Court of Mississippi.
March 15, 1971.
Jack E. Pool, Natchez, for appellant.
Gwin & Gwin, Natchez, for appellee.
PATTERSON, Justice.
This is an appeal by an agricultural lessee from final decrees of the Chancery Court of Adams County which overruled his motion to dissolve a temporary injunction and which struck the lessee's suggestion of damages resulting from the alleged wrongful issuance of the writ. The lessor cross-appeals, contending that the court *596 erred in modifying the injunction on the hearing to dissolve.
In 1966 Butler C. Barksdale, hereinafter referred to as the lessor, and Glen A. Stinson, hereinafter referred to as the lessee, entered into a share lease agreement by which the lessee rented the lands of the lessor for the purpose of raising soybeans. The agreement was for a term of four years with an option in the lessee for one additional crop year. It provided inter alia that the rental payments were to consist of one-fourth of the annual crop and that storage bins were to be provided by the lessor for storage of the soybeans prior to marketing. The lessee by the terms of the agreement was to harvest the crop in accordance with good farming practices and was required to store the harvested beans in the bins provided by the lessor.
The record reflects that the beans were placed in the storage bins for the crop year 1966, the first year of the lease agreement. The evidence is in conflict as to whether the beans were stored for the crop year 1967. In 1968 the beans were loaded directly from the fields into trucks and sold by the lessee for the benefit of both, thus avoiding the storage requirement. The lessee contends that the lessor acquiesced in the practical arrangement of moving the beans directly from the fields to market without storing them in the bins during the years 1967 and 1968 and by this consent their lease agreement was modified. The lessor denies modification of the contract, stating that he objected to the beans being marketed directly, but that he did not wish to create great furor by his denial.
In the 1969 crop year the lessee arranged to sell the beans for that year to the Franklin County Co-op. and notified the lessor of this arrangement in September. On November 6, 1969, the lessor gave written notice to the lessee that he expected the bean crop to be placed in the storage bins provided. Thereafter, when the lessor determined that the lessee had not placed all of the beans from the first wagonloads into the storage bins, he caused this writ of injunction to issue from the chancery court without notice to the lessee. The writ of November 13, 1969, provided:
We therefore strictly enjoin and command you under penalty of contempt of court, that you absolutely refrain from your threatened and continued breach of that provision of the lease contract of the 31st day of March, 1966, Exhibit "A" to the complaint, which requires that the bean crop be "harvested in accordance with good farming practices and put by Tenant into the storage bins * * *" provided for that purpose by the Complainant, Butler C. Barksdale.
On November 21, 1969, during the hearing upon a motion to dissolve, the court entered its order modifying or partially dissolving the writ by eliminating the words "harvested in accordance with good farming practices," therefrom and thereafter, by separate decrees of December 17, 1969, struck the suggestion of damages filed by the lessee and entered its final decree upholding the issuance of the temporary injunction as modified by the November 21 decree.
The lessee appeals from these decrees, contending that the court erred in issuing the temporary injunction, in refusing to dissolve the injunction, and in failing to award damages for its wrongful issuance. The lessor cross-appeals and assigns as error the action of the court in modifying the writ of injunction.
In recognition of the extraordinary nature of the writ of injunction this Court has long adhered to the rule that the writ should be so clear and explicit on its face that the defendant will be distinctly and exactly informed of what he is enjoined from doing or what he is commanded to do. Griffith, Mississippi Chancery Practice, section 449 (2d Ed. 1950). In Morgan v. United States Fidelity & Guaranty *597 Co., 191 So.2d 851, 854 (Miss. 1966), we stated:
In entering decrees for specific performance, courts frequently require the performance of some specific act or prohibit the doing of some specific act. Thus it is that injunctive relief is one of the methods used in enforcing contracts. "In decreeing specific performance, a court of equity must require the performance of some certain and specific act which ought to be performed by the delinquent party, and it cannot enter a general decree that in future the delinquent party shall perform the acts required of him by his contract." 49 Am. Jur. Specific Performance § 176, at 200 (1943).
See also Lauck v. Gilbert, 252 Miss. 371, 393, 173 So.2d 626, 636-637 (1965), in which we held:
That part of the decree awarding injunctive relief, however, must be reversed and the cause remanded in order that the decree may be made more specific as to what the appellant is required to do or not to do under the injunction. Illinois Central Railroad Company v. George, 241 Miss. 233, 130 So.2d 260 (1961). As stated by Judge Griffith in his Mississippi Chancery Practice, 2d Ed., section 449 (1950), "* * * while the writ is issued by the clerk * * * it is highly important that the writ be drawn exactly as allowed by the fiat and that it be so clear and explicit on its face that it will distinctly inform the defendant just what he is enjoined from doing or commanded to do. The defendant will not be required to obey an obscure writ, nor will he be obliged to resort to the bill to ascertain the details of what was intended by the writ."
In applying the above standards of certainty and exactitude to the injunctive writ at hand, it is obvious, we think, that the writ was vague since it refers to the general terms of the contract, "harvested in accordance with good farming practices," without specifying what constituted good farming practices. Evidently, in recognition of this vagueness, the chancellor modified the writ by deleting the abovequoted words. The vague writ was in effect from November 13 until November 21, 1969, during which time the lessee was subject to being cited for contempt of court for any act on his part considered to be in violation of good farming practices. Whether he was damaged by the writ during this interval is problematical and not within the province of this Court to determine. However, the right of the lessee to damages, perhaps nominal, arose in the course of the proceedings and he should have been permitted to introduce evidence thereof on the motion to dissolve. Canadian & A. Mortgage & Trust Co. v. Fitzpatrick, 71 Miss. 347, 14 So. 270 (1893) and Staple Cotton Co-op. Ass'n v. Borodofsky, 139 Miss. 368, 104 So. 91 (1925), as well as Griffith, Mississippi Chancery Practice, section 462 (2d Ed. 1950).
The next question presented is whether the remaining portion of the injunction, which required the beans to be placed by the lessee into the storage bins was properly issued. The lessee offered proof in accord with the averments of his answer that the original contract with reference to the storage provision was not followed by the parties subsequent to 1966. He contended that the lessor by assenting to this course of action effectively modified the initial lease contract. The lessor's objection to this evidence was sustained by the chancellor though he did permit the lessee to proffer that which his evidence would tend to prove. The proffer discloses:
During all subsequent years, including the current year, the Defendant made only slight use of such storage facilities to handle temporary overloads; and the customary practice, known and assented to by the Complainant, during all such years was to sell beans directly to the *598 purchaser by loading such beans into trucks from the fields without the use of the storage facilities.
This course of action was denied by the lessor, resulting in an issue of fact for determination by the chancellor. The excluded evidence was relevant and essential to the resolution of this issue and should not have been excluded. While true that the contract was required to be in writing, nevertheless, the modification contended for by the lessee is admissible to show in what manner the contract had been executed by the parties. In Broome Construction Co. v. Beaver Lake Recreational Center, Inc., 229 So.2d 545, 547 (Miss. 1970), we stated:
Rights acquired under a contract may be abandoned or relinquished by agreement or conduct clearly indicating such purpose. Intent to abandon or rescind may be inferred from conduct of the parties which is inconsistent with the continued existence of the agreement. Mutual assent to rescind or abandon a contract may be manifested in other ways than by words. 2 Restatement of Contracts § 406 (1932); 17 Am.Jur.2d, Contracts § 494 (1964); 17A C.J.S. Contracts § 412 (1963).
We are of the opinion that the lessee should have been permitted to introduce his evidence relating to the actions or assent of the lessor with regard to the storage provision since it could have been the basis for a finding that the lessor had waived this provision of the contract. In the event of such a finding it would, of course, logically follow that the injunction should not have issued.
The cause will be reversed and remanded for the ascertainment of damages, if any, resulting from the partial dissolution of the injunction and for hearing on the question of modification of the contract.
We have considered the cross appeal of the lessor and find it to be without merit since, in our opinion, the injunction was in part vague and indefinite and therefore correctly subject to partial dissolution or modification by the chancellor.
Reversed and remanded.
GILLESPIE, P.J., and RODGERS, INZER, and ROBERTSON, JJ., concur.